**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED FOR FBI INTEGRITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-2885 (RC) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REVISED STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(h), Plaintiff United for FBI Integrity ("Plaintiff") hereby submits the following revised statement of material facts as to which the Plaintiff contends there are no genuine issues in support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment. In this revised statement, Plaintiff has added Plaintiff's Undisputed Material Fact Nos. 65-80 .The accompanying Second Declarations of James S. Davidson and Michael S. Zummer support these additional material facts in this statement. Plaintiff's Undisputed Material Fact Nos. 1-64 are supported by the first declarations of James S. Davidson, ECF No. 15-5, and Michael S. Zummer, ECF No. 15-3. Defendant's previous responses to Plaintiff's Undisputed Material Fact Nos. 1-64 from its Response to Plaintiff's Statement of Facts, ECF No. 18-1, are included in this revised statement.

**Plaintiff's Response to Defendant's Statement**

1.    On November 9, 2021, Plaintiff submitted three requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to FBI for certain records regarding Sallet. Compl. ¶ 12, ECF No. 1.

1

**Response:**    Admitted.

2.    Specifically, Plaintiff's requests read as follows:

a.    Request records documenting any and all communications by or with FBI Director Christopher Wray, FBI Deputy Director Paul Abbate, or any of their staffs, regarding allegations of misconduct, wrongdoing, malfeasance and/or the retirement of Jeffrey Stephen Sallet, aka Jeff Sallet, Associate Deputy Director of the FBI, between April 1, 2021 and November 5, 2021. Records include, but are not limited to, e-mails, memoranda, notes, and text messages.

b.    Request records held by the FBI Inspection Division regarding any allegations of misconduct against, or investigations of, Jeffrey Stephen Sallet, aka Jeff Sallet, formerly [Special Agent in Charge "SAC"] New Orleans, SAC Chicago, Associate [Executive Assistant Director "EAD"] Facilities and Finance Division, EAD Human Resources Branch, and Associate Deputy Director of the FBI, between September 30, 2016 and November 5 2021. Records include, but are not limited to, complaints, allegations, investigative files, and dispositions of any allegations or investigations.

c.    Request records held by the FBI Office of Professional Responsibility (OPR) regarding any allegations of misconduct against, investigations of, or adjudication of charges against, Jeffrey Stephen Sallet, aka Jeff Sallet, formerly SAC New Orleans, SAC Chicago, Associate EAD Facilities and Finance Division, EAD Human Resources Branch, and Associate Deputy Director of the FBI, between September 30, 2016 and November 5 2021. Records include, but are not limited to, complaints, allegations, investigative files, and dispositions of any allegations, investigations, or disciplinary charges.

*Id.*

**Response:**    Admitted.

3.    On November 18, 2021, FBI responded to Plaintiff's requests as follows:

You have requested records on one or more third party individuals. Please be advised the FBI will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552(b)(6) and (b)(7)(C). The mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist.

*Id.* ¶ 13.

**Response:**    Admitted.

4.      On January 25, 2022, Plaintiff filed an administrative appeal of FBI's response to his requests with the Department's Office of Information Policy. *Id.* ¶ 14.

**Response:**    Admitted.

5.      On May 19, 2022, the Department affirmed FBI's response. *Id.* ¶ 15.

**Response:**    Admitted.

6.      Also on November 9, 2021, Plaintiff submitted a FOIA request to the Inspector General for certain records regarding supposed allegations of misconduct against or investigations of Sallet. *Id.* ¶ 16.

**Response:**    Admitted.

7.      Specifically, Plaintiff's requests read as follows:

Request records regarding any allegations of misconduct against, or investigations of, Jeffrey Stephen Sallet, aka Jeff Sallet, formerly of the FBI, formerly SAC New Orleans, SAC Chicago, Associate EAD Facilities and Finance Division, EAD Human Resources Branch, and Associate Deputy Director of the FBI, between September 30, 2016 and November 5 2021. Records include, but are not limited to, complaints, allegations, investigative files, and dispositions of any allegations or investigations.

*Id.*

**Response:**    Admitted.

8.      On November 23, 2021, the Inspector General responded to Plaintiff's request as follows:

[Y]ou seek records relating to Jeffrey Stephen Sallet. Because your request seeks investigatory records, we will neither confirm nor deny the existence of any such records. Without the consent of the individuals you mention, an official acknowledgement of an investigation involving them, or an overriding public interest, acknowledging the existence of such records could reasonably be expected to constitute an unwarranted invasion of privacy. 5 U.S.C. §552(b)(7)(C).

*Id.* ¶ 17.

**Response:**    Admitted.

9.      On January 25, 2022, Plaintiff filed an administrative appeal of the Inspector

General's response with the Department's Office of Information Policy. *Id.* ¶ 18.

**Response:**    Admitted.

10.    On April 25, 2022, the Department affirmed the Inspector General's response. *Id.* ¶ 19.

**Response:**    Admitted.

11.    During the pendency of this litigation, FBI searched the electronic communications of Director Christopher Wray, Deputy Director Paul Abate, Chief of Staff Corey Ellis, and Sallet himself for records concerning Sallet's retirement not subject to its Glomar response. Bender Decl. ¶¶ 11-12.

**Response:**    Plaintiff lacks sufficient knowledge to admit or deny, but the Plaintiff does not dispute this assertion by the FBI.

12.    FBI searched both FBINET and UNET—FBI's classified and unclassified email systems, respectively—for records using the search terms "retire" and/or "retir!" created between April 1, 2021 and November 5, 2021. *Id.* ¶ 12.

**Response:**    Plaintiff lacks sufficient knowledge to admit or deny, but the Plaintiff does not dispute this assertion by the FBI.

13.    The search produced some potentially responsive records, which FBI then scoped for responsiveness. *Id.*

**Response:**    Plaintiff lacks sufficient knowledge to admit or deny, but the Plaintiff does not dispute this assertion by the FBI.

14.    After scoping this pool of records, FBI located no responsive records. *Id.*

**Response:**    Plaintiff lacks sufficient knowledge to admit or deny, but the Plaintiff does not dispute this assertion by the FBI.

15.    Plaintiff has claimed that Mr. Sallet was accused of or investigated for several

instances of wrongdoing, including unlawfully retaliating against former FBI Agent Michael Zummer, who runs Plaintiff, violating Zummer's constitutional rights, and engaging in workplace sexual harassment/abuse. *Id.* ¶ 14.

**Response:** Denied to the extent that Zummer runs Plaintiff. Plaintiff is run by former FBI agent James Davidson. Plaintiff was acting as In-House Counsel for the Plaintiff during the time of the FOIA requests in this case were filed. He is currently acting as counsel for Plaintiff and no longer serves as an officer for Plaintiff. Davidson Decl. ¶¶ 1, 6 n.1; Zummer Decl. ¶ 6. Admitted as to the Plaintiff's claims about Sallet.

16.    If such misconduct occurred as described by Plaintiff, the conduct could potentially constitute illegal acts that could be punished by criminal or civil sanctions. Bender Decl. ¶ 14.

**Response:** Admitted to the extent that violations of constitutional rights would be legal violations. Denied to the extent that all misconduct alleged by the Plaintiff could potentially constitute illegal acts. The FBI has a substantial number of disciplinary offense codes that are not potentially illegal acts, such as consensual sexual conduct, FBI Offense Code 5.19 Sexual Conduct – Consensual  and FBI Offense Code 5.10 Improper Relationship with a Subordinate. Even some violations of FBI Offense Code 5.20 Unwelcome Sexual Conduct are not potentially illegal acts, because that Offense Code specifically states that it "includes any unwelcome verbal or physical conduct of a sexual nature, and is not limited to conduct that creates a 'hostile work environment' under federal or state law." Zummer Decl. Exh. A at 15-17.

17.    Thus, if any investigatory records exist regarding Plaintiff's allegations, they would necessarily be records compiled for law enforcement purposes, and responsive records, should any exist, would have been collected and maintained by the FBI as part of its law enforcement mission. Bender Decl. ¶¶ 14-15.

**Response:** Denied. The Plaintiff requested records from FBI Inspection Division, Office

of Professional Responsibility, and Sallet's supervisors and their staffs, all of which would have been compiled for administrative purposes, not law enforcement purposes.

18.    Complaints of misconduct by individual Department employees are reported to and typically investigated by law enforcement agents assigned to the Inspector General's Investigation Division for potential criminal or civil prosecution, or administrative action by the employing Department component. Waller Decl. ¶ 10.

**Response:**    Denied to the extent that complaints of misconduct by individual Department employees are "typically investigated by law enforcement agents assigned to the Inspector General's Investigation Division." Although the Office of the Inspector General ("OIG") conducts some investigations of Department employees, FBI employees are also investigated by its own Inspection Division. Admitted as to the remainder.

19.    It is difficult to imagine why the Inspector General would possess any records regarding Sallet that would not qualify as law enforcement records, given that the Inspector General does not maintain personnel or other administrative records of employees of other, non-Inspector General Department components. Waller Decl. ¶ 10 n.2.

**Response:**    Denied. By its own admission the OIG conducts some investigations of Department personnel for "administrative action." *Id.* ¶ 10. Also, Ms. Waller has previously declared otherwise in another case. See *Di Montenegro v. FBI*, 1:16CV1400 (JCC/JFA), 2017 WL 2692613, at *6 (E.D. Va. June 22, 2017) ("The OIG argues that 'the documents concerned an allegation of work-related misconduct,' qualifying as a 'personnel' file under Exemption 6.") (quoting declaration by Deborah M. Waller). Any records compiled for administrative action would not be compiled for law enforcement purposes.

20.    Any responsive records thus necessarily would have been created for law enforcement purposes. *Id.* ¶ 10.

6

**Response:**    Denied. Any records compiled as part of an investigation for administrative action were not compiled for law enforcement purposes.

21.    Neither FBI nor the Inspector General have confirmed the existence of any investigation of Sallet. Bender Decl. ¶ 21; Waller Decl. ¶ 13.

**Response:**    Admitted.

22.    Nor, as best the Department knows, has Sallet confirmed any investigation of himself.

**Response:**    Admitted.

23.    Plaintiff has submitted no privacy waiver from Sallet or proof of Sallet's death. Bender Decl. ¶ 20.

**Response:**    Admitted.

24.    Publicly available information shows that Sallet currently works as a partner at Ernst & Young LLP, where he presumably makes a significantly higher salary than he did as a public servant. *See Jeffrey S. Sallet*, Ernst & Young LLP, https://www.ey.com/en_us/people/jeffrey-sallet.

**Response:**    Admitted to the extent that Sallet currently works as a partner at Ernst & Young LLP. Denied to the extent that Sallet presumably makes a significantly higher salary than he did as the third-highest official in the FBI.

25.    Sallet had worked at FBI for nearly 25 years, and served in numerous roles within the agency. *See* Compl. ¶ 10; Press Release, *Jeffrey S. Sallet Named FBI Associate Deputy Director*, FBI (Feb. 3, 2021), https://www.fbi.gov/news/press-releases/jeffrey-s-sallet-named-fbi-associate-deputy-director.

**Response:**    Admitted.

### Plaintiff's Statement of Undisputed Material Facts

1.    According to an FBI document entitled *The FBI's Disciplinary Process: Explanation*

*of Process*, *available at* https://accountabilityfbi.org/index.php/2023/01/09/fbi-disciplinary-process-explanation-of-process/, "If an employee is alleged to have engaged in misconduct, the [FBI] Inspection Division and/or DOJ's Office of Inspector General will review the allegation to decide whether the allegation is sufficiently credible to warrant an investigation. If yes, a file will be opened and the matter will be investigated. At the conclusion of the investigation, the matter will be referred to [FBI Office of Professional Responsibility ("FBI OPR")] for further action." Zummer Decl. ¶ 23.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

2.      According to *The FBI's Disciplinary Process: Explanation of Process*, "Once a matter is referred to [FBI OPR], [FBI OPR's] staff…will review all investigative materials and prepare a report discussing the allegations, relevant facts, applicable policies, rules, regulations, laws, or other legal standards, and make a finding as to whether the employee violated an FBI Offense Code…." Zummer Decl. ¶ 23.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

3.      According to *The FBI's Disciplinary Process: Explanation of Process*, FBI OPR issues the following type of documents when making a decision about employee misconduct: No Action Letter, Non Disciplinary Counseling [Electronic Communication ("EC")], Oral Reprimand EC, Letter of Censure, and Letter of Suspension, Demotion, or Dismissal. Zummer Decl. ¶ 23.

**Response:** This paragraph consists of characterization of a document. The Department avers

that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

4.      An FBI document entitled *Offense Codes and Penalty Guidelines Governing FBI's Internal Disciplinary Process* ("FBI Offense Codes and Penalty Guidelines") *available at* https://accountabilityfbi.org/index.php/2022/09/16/fbi-offense-codes-and-penalty-guidelines/, provides "general categories of misconduct for which employees may be disciplined." Zummer Decl. ¶ 24, Exh. A at 2.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

5.      The FBI Offense Codes and Penalty Guidelines arranges FBI Offense Codes under the following five main headings: 1) Investigative Misconduct, described as "source misconduct and investigative deficiencies, such as improper handling of evidence and misconduct related to judicial proceedings"; 2) Integrity/Ethical Misconduct, described as "falsification of FBI documents, lack of candor, misuse of position, failure to cooperate in an administrative inquiry, obstruction of an administrative inquiry, and violation of ethics regulations and guidelines."; 3) Property-Related Misconduct, described as "loss of government property, misuse of FBI computers or databases, misuse of government credit cards, misuse of government vehicles and other government property, loss of weapon, and loss of credentials/badge."; 4) Illegal/Criminal Conduct, described as "assault, drug offenses, DWI/DUI, fraud, theft, other illegal interference with property rights, indecent/lascivious acts, other felony and misdemeanor offenses, and the unauthorized disclosure of information. It is not necessary that criminal charges be filed against the employee or that the

employee be found guilty of criminal charges for the employee to be subject to disciplinary action.";
and General Misconduct, described as "alcohol/substance abuse on duty, failure to report,
supervisory dereliction, unwelcome sexual conduct, discrimination, retaliation, disruptive behavior,
failure to honor just debts, improper relationship with a subordinate, misuse of weapons,
insubordination, security violations, unprofessional conduct, and the violation of miscellaneous rules
and regulations." *Id.*

**Response:** This paragraph consists of purported excerpts and/or characterization of a
document. The Department avers that this document is the best evidence of its contents, respectfully
refers the Court to that document for a complete and accurate statement of its contents, and denies
any contentions inconsistent therewith.

6.      FBI Offense Code 5.10 is for "Improper Relationship with a Subordinate" which
includes "Engaging in or seeking a romantic relationship with a subordinate that violates the
strictures of the FBI's Personal Relationships Policy…." Zummer Decl. ¶ 53, Exh. A at 15.

**Response:** This paragraph consists of purported excerpts and/or characterization of a
document. The Department avers that this document is the best evidence of its contents, respectfully
refers the Court to that document for a complete and accurate statement of its contents, and denies
any contentions inconsistent therewith.

7.      FBI Offense Code 5.19 is for "Sexual Conduct – Consensual" which is defined as
"[e]ngaging in sexual, intimate, or romantic activity with a willing partner in an inappropriate
location (such as government spaces, government vehicles), or while on duty." Zummer Decl. ¶ 54,
Exh. A at 16.

**Response:** This paragraph consists of purported excerpts and/or characterization of a
document. The Department avers that this document is the best evidence of its contents, respectfully
refers the Court to that document for a complete and accurate statement of its contents, and denies

any contentions inconsistent therewith.

8.    FBI Offense Codes address administrative violations that are not necessarily violations of law. Zummer Decl. ¶ 26, Exh. A.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

9.    FBI Offense Codes themselves were not passed by Congress or any other law-making body, although they may incorporate some legal standard or violations of law. *Id.*

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

10.    According to an FBI document entitled *OPR Statement of Authorities and Responsibilities* (Mar. 31, 2008) ("FBI OPR Statement") *available at* https://accountabilityfbi.org/index.php/2023/01/09/fbi-office-of-professional-responsibility-statement-of-authorities-and-responsibilities/, "[FBI] OPR was created to expeditiously and impartially adjudicate allegations of employee misconduct." Zummer Decl. ¶ 28.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

11.    According to the FBI OPR Statement, the Assistant Director, FBI OPR is responsible for: "Adjudicating allegations of employee misconduct by thoroughly reviewing the investigative

11

file to determine whether…the allegation against the employee has been substantiated and, if so, deciding the appropriate disciplinary penalty based on the FBI's Penalty Guidelines." *Id.*

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

12.     According to the FBI OPR Statement, "These penalties include oral reprimands, letters of censure, suspensions, demotions, dismissals, and summary dismissals, in accordance with FBI policies and procedures." *Id.*

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

13.     According to OIG document *I-2009-002 Review of the Federal Bureau of Investigation's Disciplinary System* (May 2009) ("OIG Review") at ii-iii *available at* https://www.oversight.gov/sites/default/files/oig-reports/final_4.pdf:

> Under FBI policy, FBI employees must report all allegations of misconduct to appropriate FBI officials—who in turn are required to report them to the OIG. As with other Department agencies, the OIG can investigate any of these allegations. Normally, the OIG investigates criminal allegations or the most serious administrative allegations involving high-level FBI employees or those that implicate systemic issues. Most allegations of less serious administrative misconduct are referred back to the FBI for appropriate handling.

> The Internal Investigations Section in the FBI's Inspection Division oversees the reporting and investigative phases of the disciplinary process. Investigations of misconduct by the FBI are handled by either personnel in the FBI's Inspection Division or designated FBI staff in field and headquarters divisions overseen by the Internal Investigations Section.

> During the adjudicative phase, overseen by the FBI's Office of Professional

Responsibility (FBI OPR), the FBI determines whether the allegations are substantiated and, if so, FBI OPR proposes and decides the discipline.

Zummer Decl. ¶ 29.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

14.    In the same report, the OIG

found that a significant percentage of FBI employees we surveyed believed that there was a double standard of discipline in the FBI for higher- and lower-ranking employees. Our review of FBI disciplinary decisions found that allegations of misconduct were much more likely to be unsubstantiated against SES employees than non-SES employees. We found even more significant differences in the rates that SES employees' penalties were mitigated on appeal (5 out of 6, or 83 percent of the time) as compared to non-SES employees' penalties (44 out of 247, or 18 percent of the time). In addition, as noted in the previous finding, we concluded that the mitigation of most of these SES appeals was unreasonable.

Davidson Decl. ¶ 20; OIG Review at vi-vii.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

15.    According to the report for OIG case number 21-004894, the OIG investigated an FBI Special Agent in Charge ("SAC") for improper relationships with subordinates and misuse of a government vehicle, neither of which are, by themselves, violations of law. Zummer Decl. ¶ 30, Exh. B at 5-7.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document

for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

16.    According to OIG, *Investigative Summary 22-088, Findings of Misconduct by a then Special Agent in Charge and two Assistant Special Agents in Charge for Engaging in Favoritism in the Workplace, Multiple Violations of Hiring Policies, and Related Misconduct* (Jul. 7, 2022) *available at* https://oig.justice.gov/sites/default/files/reports/22-088.pdf, the OIG conducted an investigation into an FBI SAC and an Assistant Special Agent in Charge for "engag[ing] in unprofessional conduct, including by exhibiting favoritism in granting promotions." The SAC retired before being contacted for an interview. Zummer Decl. ¶ 31.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

17.    According to OIG*, Investigative Summary 20-081 Findings of Misconduct by a then Federal Bureau of Investigation Unit Chief for Engaging in an Improper, Intimate Relationship with a Subordinate and Related Misconduct* (Jul. 10, 2020) *available at* https://oig.justice.gov/sites/default/files/reports/20-081_0.pdf, the OIG conducted an investigation into an FBI Unit Chief for an intimate relationship with a subordinate and other allegations in violation of FBI policy. The Unit Chief retired while the investigation was ongoing. Zummer Decl. ¶ 32.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

18.     According to OIG, *Investigative Summary 21-098 Findings of Misconduct by an FBI Assistant Director for Failure to Timely Report a Romantic Relationship with a Subordinate and Related Misconduct* (July 22, 2021) *available at* https://oig.justice.gov/sites/default/files/reports/21-098.pdf, the OIG investigated an FBI assistant director for failing to report a romantic relationship with a subordinate. Zummer Decl. ¶ 33.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

19.     According to OIG, *Investigative Summary 22-030 Findings of Misconduct by a Senior FBI Official for Failure to Timely Report a Romantic Relationship with a Subordinate, Lack of Candor, and Related Misconduct; and by another (now Retired) Senior FBI Official for Failure to Take Proactive Measures Necessary to Mitigate Adverse Consequences of the Romantic Relationship* (Jan. 20, 2022*) available at* https://oig.justice.gov/sites/default/files/reports/22-030.pdf, the OIG investigated a senior FBI official based on an allegation that the official had "engaged in a romantic relationship with a subordinate employee that resulted in the Senior FBI Official's violation of FBI policies." Zummer Decl. ¶ 34.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

20.     The FBI issued a press release announcing Jeffrey S. Sallet's promotion to the position of Associate Deputy Director dated February 3, 2021. FBI, Press Release, *Jeffrey S. Sallet Named FBI Associate Deputy Director* (Feb. 3, 2021) *available at* https://www.fbi.gov/news/press-

releases/press-releases/jeffrey-s-sallet-named-fbi-associate-deputy-director. Zummer Decl. ¶ 7.

      **Response:** Admitted.

      21.    Associate Deputy Director is the third-highest position within the FBI. FBI, *Leadership & Structure*, *available at* https://www.fbi.gov/about/leadership-and-structure; *Jeffrey S Sallet*, Ernst & Young *available at* https://www.ey.com/en_us/people/jeffrey-sallet), Zummer Decl. ¶ 8, Exh. C.

      **Response:** This paragraph consists of characterization of two documents. The Department avers that these documents are the best evidence of their contents, respectfully refers the Court to these documents for complete and accurate statements of their contents, and denies any contentions inconsistent therewith.

      22.    The FBI issued a press release announcing Sallet's promotion to the position of Executive Assistant Director of the FBI's Human Resources Branch. FBI, Press Release*, Jeffrey S. Sallet Named Executive Assistant Director of the Human Resources Branch* (Mar. 30, 2020*) available at* https://www.fbi.gov/news/press-releases/press-releases/jeffrey-s-sallet-named-executive-assistant-director-of-the-human-resources-branch. Zummer Decl. ¶ 9.

      **Response:** Admitted. The Department avers that the cited link is nonfunctional, and that the correct link is https://www.fbi.gov/news/press-releases/jeffrey-s-sallet-named-executive-assistant-director-of-the-human-resources-branch.

      23.    The FBI issued a press release announcing Sallet's promotion to the position of Associate Executive Assistant Director for the Finance and Facilities Division. FBI, Press Release, *Jeffrey S. Sallet Named Associate Executive Assistant Director of the Finance and Facilities Division* (June 25, 2019) *available at* https://www.fbi.gov/news/press-releases/jeffrey-s-sallet-named-associate-executive-assistant-director-of-the-finance-and-facilities-division. Zummer Decl. ¶ 10.

      **Response:** Admitted.

24.    The FBI issued a press release announcing Sallet's appointment to the position of SAC of the FBI's Chicago office. FBI, Press Release, *Jeffrey S. Sallet Named Special Agent in Charge of the Chicago Division* (Aug. 25, 2017) *available at* https://www.fbi.gov/news/press-releases/press-releases/jeffrey-s-sallet-named-special-agent-in-charge-of-the-chicago-division. Zummer Decl. ¶ 11.

**Response:** Admitted.

25.    The FBI issued a press release announcing Sallet's promotion to the position of SAC of the FBI's New Orleans office. FBI, Press Release, *Jeffrey S. Sallet Named Special Agent in Charge of New Orleans Division* (Oct. 19, 2015) *available at* https://www.fbi.gov/news/press-releases/press-releases/jeffrey-s.-sallet-named-special-agent-in-charge-of-new-orleans-division (last visited June 1, 2023). Zummer Decl. ¶ 12.

**Response:** Admitted.

26.    Sallet retired from the FBI approximately nine months after his appointment to the position of Associate Deputy Director during October or November 2021. Zummer Decl. ¶ 7.

**Response:** Admitted.

27.    According to Ernst & Young's website, Sallet is profiled as: "Investigations & Compliance, Forensic & Integrity Services, Crisis Management Leader Former federal investigator. C-suite leader. CPA. Boston native. 5x Boston Marathon finisher. Devoted to family….Jeff has more than 25 years of experience in investigations, forensic accounting, government regulations, leadership and communications. He previously served as Associate Deputy Director of the FBI, third in command. As a special agent, Jeff incorporated forensic accounting with traditional methods to investigate terrorism and terrorism financing, fraud, corruption and organized crime." *Jeffrey S Sallet*, Ernst & Young, *available at* https://www.ey.com/en_us/people/jeffrey-sallet; Zummer Decl. ¶ 56, Exh. C.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

28.     According to publicly available federal court records, Sallet has been accused of violating the constitutional rights of a then FBI employee. Zummer Decl. ¶ 80; *Zummer v. Sallet*, No. 17-07563-CJB-DPC (E.D. La. Aug. 7, 2017) (Complaint) [ECF Doc. 1].

**Response:** This paragraph consists of characterization of certain documents. The Department avers that these documents are the best evidence of their contents, respectfully refers the Court to these documents for complete and accurate statements of their contents, and denies any contentions inconsistent therewith.

29.     The lawsuit against Sallet, the FBI, and other FBI officials was reported in the media and is available online. Zummer Decl. ¶ 80; David Hammer, *FBI agent sues bureau over suspension*, WWL-TV (Aug. 7, 2017) *available at* https://www.wwltv.com/article/news/local/fbi-agent-sues-bureau-over-suspension/289-462651967.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

30.     According to an OIG report, Sallet participated in an effort to suspend an FBI employee's security clearance for disclosing unclassified allegations of prosecutorial misconduct to a federal judge. *See* OIG, An Investigation of Alleged Retaliation Against FBI Special Agent Michael Zummer (June 2018), Zummer Decl. ¶ 79, Exh. E at 29; *also available at Zummer v. Sallet*, No. 17-07563-CJB-DPC (E.D. La. Nov. 25, 2020) (Second Motion to Compel Exh. D) [ECF Doc. 108-7].

Sallet is "SAC 2" in the report, because the report describes SAC 2 as "the FBI official who became SAC in the New Orleans Division in October 2015," which FBI press releases show was Sallet. Zummer Decl. Exh. E at 12.

**Response:** This paragraph consists of purported excerpts and/or characterization of certain documents. The Department avers that these documents are the best evidence of their contents, respectfully refers the Court to these documents for complete and accurate statements of their contents, and denies any contentions inconsistent therewith.

31.     FBI emails show that Sallet through his subordinate participated in efforts to influence FBI prepublication review decisions about a letter to report unclassified allegations of DOJ misconduct to a federal judge. Zummer Decl. ¶¶ 84-85, Exh. F, Exh. G.

**Response:** This paragraph consists of characterization of certain documents. The Department avers that these documents are the best evidence of their contents, respectfully refers the Court to these documents for complete and accurate statements of their contents, and denies any contentions inconsistent therewith.

32.     FBI emails show that Sallet, through his subordinate, participated in efforts to influence FBI prepublication review to censor unclassified information regarding allegations of DOJ misconduct. Zummer Decl. ¶ 86, Exh. G; *also available at Zummer v. Sallet*, No. 17-07563-CJB-DPC (E.D. La. Nov. 25, 2020) (Second Motion to Compel Exh. B) [ECF Doc. 108-5] at 3-4, 17, 22, 34 (AR000017-18, 31, 36, 48).)

**Response:** This paragraph consists of characterization of certain documents. The Department avers that these documents are the best evidence of their contents, respectfully refers the Court to these documents for complete and accurate statements of their contents, and denies any contentions inconsistent therewith.

33.     There is no classified information, nor was there ever classified information, in the

following passage:

> Danelle Keim faced far greater risks when she called 911 on April 16, 2010.  I will
> never forget listening to her over a transmitter in her apartment while she waited for
> Morel to arrive on July 23, 2012.  She was on the verge of breaking down from stress.
> She told me she was having flashbacks from Morel's sexual battery which prompted
> the emergency call more than two years earlier.  She pulled herself together though
> and was a true hero.  Danelle Keim was brave as anyone I have ever known.  I will
> never forget the abuses the other women described to me.  Nor will I forget their
> courage in disclosing them.  One woman's description of what Morel did to her will
> haunt me for the rest of my life.

Zummer Decl. ¶ 86, Exh. G at 6.

**Response:** This paragraph consists of purported excerpts and/or characterization of a
document. The Department avers that this document is the best evidence of its contents,
respectfully refers the Court to that document for a complete and accurate statement of its
contents, and denies any contentions inconsistent therewith.

34.    The FBI censored the above passage quoted in Plaintiff's Statement of Fact #32.
Zummer Decl. ¶ 87; *Zummer v. Sallet*, No. 17-07563-CJB-DPC (E.D. La. Aug. 7, 2017) (Complaint
Exh. A) [ECF Doc. 1-1] at 33.

**Response:** The Department admits that FBI did not grant Michael Zummer permission to
send the information at issue to the district court. Plaintiff's characterization of this as censorship is
a statement of opinion that requires no response, and with which the Department disagrees.

35.    According to *Salary Details for a Partner at EY*, Glassdoor.com, *available at*
https://www.glassdoor.com/Salary/EY-Partner-Salaries-E2784_D_KO3,10.htm, an Ernst & Young
(EY) partner's base pay is between $140,000 and $246,000 per year, although the partner can earn
between $96,000 and $180,000 in additional pay. Zummer Decl. ¶ 57.

**Response:** This paragraph consists of purported excerpts and/or characterization of a
document. The Department avers that this document is the best evidence of its contents, respectfully
refers the Court to that document for a complete and accurate statement of its contents, and denies

any contentions inconsistent therewith.

36.    According to *Salary Table No. 2022-EX*, Office of Personnel Management (Jan. 2022) *available at* https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/pdf/2022/EX.pdf, a federal SES Level I employee's base salary was $226,300 in 2022. Zummer Decl. ¶ 58.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

37.    According to Nicole Ogrysko, *More career senior executives earned higher-value performance bonuses in 2016*, Federal News Network (Feb. 21, 2018) *available at* https://federalnewsnetwork.com/ses/2018/02/more-career-senior-executives-earned-higher-value-performance-bonuses-in-2016/, in 2016, 81% of career members of the SES, excluding the FBI and Drug Enforcement Administration, received bonuses. Zummer Decl. ¶ 59.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

38.    Mandatory retirement for federal law enforcement personnel, including FBI agents, is age 57 or as soon as 20 years of service have been completed after the age of 57, with some exemptions possible. 5 U.S.C. § 8425(b); Congressional Research Service, *R42631 Retirement Benefits for Federal Law Enforcement Personnel* (updated) (Sept. 5, 2017) ("Retirement Benefits") at                                6                                *available                                at* https://crsreports.congress.gov/product/pdf/R/R42631/14#:~:text=Under%20both%20CSRS%20an

d%20FERS,for%20retirement%20regardless%20of%20age. Zummer Decl. ¶ 60.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

39.    Federal law enforcement officers "accrue [Federal Employees' Retirement System] benefits at the rate of 1.7% per year for the first 20 years of service and 1% per year for each year thereafter." Retirement Benefits at 8; Zummer Decl. ¶ 62.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

40.    In a news report in which Sallet was interviewed by journalists dated November 22, 2017, Sallet was reported to be forty-seven years old. Chuck Goudie and Ross Weidner, *New FBI boss says Chicago 'attractive' to terrorists*, ABC7 (Nov. 22, 2017) *available at* https://abc7chicago.com/jeffrey-sallet-chicago-fbi-boss-terrorists/2684313/. Zummer Decl. ¶ 61.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

41.    Under the Federal Employees' Retirement System, an employee's retirement annuity calculation is computed using an employee's highest three consecutive years of base pay. *Retirement Benefits* at 8; Zummer Decl. ¶ 63.

**Response:** This paragraph consists of characterization of a document. The Department avers

that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

42.    Former First Assistant U.S. Attorney ("AUSA") in the Eastern District of Louisiana Fred Harper purchased properties with Ralph Capitelli and others during 2005. Zummer Decl. ¶ 65, Exh. D 1-7.

**Response:** The Department lacks knowledge or information sufficient to form a belief as to the truth of this contention.

43.    When reviewing Harper's financial relationship with Capitelli, the "OIG…found that [Harper] began divesting his financial interests with the Defense Attorney in approximately November 2012…and that he completed the divestiture in March 2013." Zummer Decl. ¶ 72, Exh. E at 8.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

44.    AUSA Harper transferred properties he owned with Ralph Capitelli to Laura Jean Todaro on March 21, 2013. In return for those properties, Harper received Todaro's portion of a property that she owned with Harper. Zummer Decl. ¶ 67, Exh. D at 8-13.

**Response:** The Department lacks knowledge or information sufficient to form a belief as to the truth of this contention.

45.    Public records indicate that Harper resided in a property owned by Todaro around the time of the exchange and as recently as 2017. Zummer Decl. ¶  69; *Zummer v. U.S. Dep't of Justice*, No. 22-03505-JMC (D.D.C. May 17, 2023) (Declaration of Michael Zummer in Plaintiff's

Cross-Motion for Summary Judgment Exh. F) [ECF Doc. 15-3] at 197-210.

**Response:** This paragraph consists of characterization of certain documents. The Department avers that these documents are the best evidence of their contents, respectfully refers the Court to these documents for complete and accurate statements of their contents, and denies any contentions inconsistent therewith.

46.    Baldwin County, Alabama records indicate that Harper received property from Todaro appraised at approximately one third of the appraised value of the properties he transferred to her in the March 21, 2013 exchange. Zummer Decl. ¶ 70, Exh. D at 14-19.

**Response:** This paragraph consists of characterization of certain documents. The Department avers that these documents are the best evidence of their contents, respectfully refers the Court to these documents for complete and accurate statements of their contents, and denies any contentions inconsistent therewith.

47.    On May 23, 2003, then FBI Director Robert Mueller requested Griffin Bell, former Attorney General of the United States, and Dr. Lee Colwell, former Associate Director of the FBI, to lead a comprehensive study of the FBI's Office of Professional Responsibility ("OPR"). Griffin B. Bell, Lee Colwell, *Study of the FBI's Office of Professional Responsibility* (Feb. 2004) ("Bell-Colwell Report") at 6 *available at* https://accountabilityfbi.org/index.php/2022/12/24/feb-2004-report-on-fbis-office-of-professional-responsibility-bell-colwell-report/; Zummer Decl. ¶ 35.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

48.    According to the Bell-Colwell Report, there has been a perception in the FBI of a double standard of discipline favoring management over lower-level employees. Bell-Colwell

Report at 1-2; Zummer Decl. ¶ 35; Davidson Decl. ¶ 18.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

49.     According to the Bell-Colwell Report, senior FBI managers, more likely to be eligible for retirement than lower level employees, sometimes retire or resign while under investigation, fueling the perception that they have an escape route to avoid discipline not available to lower level employees. Bell-Colwell Report at 3; Zummer Decl. ¶ 37; Davidson Decl. ¶ 19.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

50.     According to OIG, *Investigative Summary 22-107, Findings of Misconduct by an FBI Special Agent in Charge for Engaging in Sexual Contact with a Subordinate in an Official Government Vehicle and Sexual Communications with Two Other Subordinate Staff Members* (Sept. 20, 2022) *available at* https://oig.justice.gov/sites/default/files/reports/22-107.pdf and report for OIG case number 21-004894, an FBI SAC retired while under investigation by the OIG. Zummer Decl. ¶ 30, Exh. B at 2.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

51.     According to OIG, *Investigative Summary 21-090, Findings of Misconduct by a then*

*FBI Special Agent in Charge and two then FBI Assistant Special Agents in Charge for Their Roles in an Unauthorized $2 Million Purchase of Intellectual Property Related to a Classified Undercover Operation and Related Misconduct* (Jul. 6, 2021) *available at* https://oig.justice.gov/sites/default/files/reports/21-090.pdf, an FBI SAC retired while under investigation by the OIG. Zummer Decl. ¶ 39.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

52. The OIG has reported that after USA Gymnastics reported sexual abuse allegations against former USA Gymnastics doctor Larry Nassar to the FBI in 2015, former SAC of the FBI's Indianapolis office, W. Jay Abbott and others failed to take appropriate investigative steps, including failing to notify the FBI resident agency and state/local law enforcement where Nassar continued to practice. Zummer Decl. ¶ 40; OIG, *21-093 Investigation and Review of the Federal Bureau of Investigation's Handling of Allegations of Sexual Abuse by Former USA Gymnastics Physician Lawrence Gerard Nassar* (Jul. 2021) ("Nassar Report") at iv *available at* https://oig.justice.gov/sites/default/files/reports/21-093.pdf.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

53. According to the OIG's review of civil court documents, Nassar was able to abuse approximately seventy young female athletes during time between when USA Gymnastics first reported allegations to the FBI and when Nassar was removed from his position. Zummer Decl. ¶

41; Nassar Report at ii.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

54.     According to the OIG, after USA Gymnastics reported allegations against Nassar to FBI Indianapolis in July 2015, SAC Abbott sought assistance from a USA Gymnastics official to get a job with the U.S. Olympic Committee. Zummer Decl. ¶ 42; Nassar Report at iii.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

55.     According to the OIG, "discussions included [USA Gymnastics Official] expressing concern to Abbott about how USA Gymnastics was being portrayed in the media and whether [USA Gymnastics Official] might be 'in trouble' and Abbott proposing to his colleagues an FBI public statement that would place USA Gymnastics in a positive light." Zummer Decl. ¶ 43; Nassar Report *Id.* at iii.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

56.     According to the OIG, Abbott retired from the FBI in January 2018, about three years before the OIG issued its report in July 2021. Zummer Decl. ¶ 44; Nassar Report at 4.

**Response:** This paragraph consists of characterization of a document. The Department avers

that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

57.    According to the OIG, journalists began sending inquiries to the FBI about its delay in investigating Nassar as early as January 17, 2017. Zummer Decl. ¶ 45; Nassar Report at 19.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

58.    According to the OIG, on February 19, 2018, "FBI's Inspection Division commence[d] a Special Review 'to assess the FBI handling of allegations regarding' Nassar, at the direction of the FBI Director." Zummer Decl. ¶ 46; Nassar Report at 21.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

59.    Approximately one year passed between when journalists began questioning the FBI about its handling of the Nassar matter and the FBI began assessing the issue itself. Zummer Decl. ¶ 47.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

60.    In December 2020, an Associated Press investigation identified at least six sexual

misconduct allegations involving senior FBI officials over the previous five years. At least three senior executives, an assistant director and two SACs, were described as leaving or retiring after being accused of sexual misconduct. Jim Mustian, *'Under the rug:' Sexual misconduct shakes FBI's senior ranks*, ASSOCIATED PRESS (Dec. 10, 2020) *available at* https://apnews.com/article/fbi-sexual-misconduct-investigation-a0d33e4770acef8ff5f4a48f0267202c. Zummer Decl. ¶ 48.

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

61.     The Associated Press reported that James Hendricks former SAC of the Albany field office "quietly retired [in 2020] as a special agent in charge after the [OIG]…concluded he sexually harassed eight female subordinates in one of the FBI's most egregious known cases of sexual misconduct." Jim Mustian, *'Skilled predator' FBI boss harassed 8 women, watchdog finds*, ASSOCIATED PRESS (Apr. 12, 2021) *available at* https://apnews.com/article/fbi-james-hendricks-sexually-harassed-8-women-b2b7653303d5d56c5bee61c137ec4b22. Zummer Decl. ¶ 49.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

62.     According to a report from the FBI's Office of Disciplinary Appeals obtained and released by U.S. Senator Charles Grassley, the subject of the Plaintiff's FOIA requests, Jeffrey Sallet, while he was an executive assistant director, asked for a review of the FBI's disciplinary case precedent database "to observe patterns and offer recommendations in light of the recent Associated Press (AP) news article, '*Under the rug' Sexual Misconduct shakes FBI's senior ranks*.'" FBI Office

of Disciplinary Appeals, *Retirements and Resignations during Unwelcome Sexual Conduct Adjudications* (Dec. 23, 2020) ("ODA Report") *available at* https://www.grassley.senate.gov/imo/media/doc/grassley_to_justice_deptinspectorgeneralsexualmi sconductreview.pdf. Zummer Decl. ¶ 50.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

63.    According to the ODA Report, the FBI conducted "[a] review of all 8,686 precedent summaries contained in the [precedent] database show[ing] that a total of 665 FBI employees, including 45 [Senior Executive Service]-level employees, have retired or resigned following an FBI or DOJ-OIG investigation into alleged misconduct, but prior to OPR's issuance of a final disciplinary letter." Zummer Decl. ¶ 50.

**Response:** This paragraph consists of purported excerpts and/or characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

64.    The ODA Report observed that only one of the 45 SES employees who retired or resigned after a completed investigation was accused of unwelcome sexual conduct. The one SES employee was former SAC Hendricks. *Id.*

**Response:** This paragraph consists of characterization of a document. The Department avers that this document is the best evidence of its contents, respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies any contentions inconsistent therewith.

65.    On February 15, 2024, Plaintiff provided to Defendant, through its counsel, the name of a new witness (hereinafter "the Witness") who had connected with Plaintiff. Second Zummer Decl. ¶ 10.

66.    On or about June 13, 2021, the Witness filed a complaint with the OIG against Jeffrey Sallet for sexual harassment and other employee misconduct. Second Davidson Decl. ¶ 6.

67.    After June 13, 2021, the Witness contacted the FBI Inspection Division about her complaint. *Id.*

68.    Approximately during July 2021, OIG informed FBI Inspection Division that it would conduct an investigation related to the Witness's complaint. *Id.*

69.    DOJ Inspector General Michael Horowitz had a personal relationship with Sallet at the time the Witness filed a complaint against Sallet with the OIG. *Id.*

70.    Because of his personal relationship with Sallet, Inspector General Horowitz recused himself from his office's handling of the Witness's complaint. *Id.*

71.    Despite Inspector General Horowitz's personal relationship, his office conducted the investigation related to the Witness's complaint until about November 17, 2021. *Id.*

72.    The OIG referred the investigation of Sallet to the Council of the Inspectors General on Integrity and Efficiency's Integrity Committee. *Id.*

73.    There was a retirement ceremony for Sallet at FBI Headquarters approximately three weeks after Sallet had already retired. *Id.*

74.    Inspector General Horowitz was advertised as the keynote speaker at Sallet's retirement ceremony. *Id.*

75.    After the Witness sent an email to the OIG, Inspector General Horowitz did not give the keynote speech, but he did attend the ceremony. *Id.*

76.    Sallet retired from the FBI on or about October 29, 2021, while under inquiry for the

violation of a terminable offense. *Id.*

     77.    Because of pending inquiry when Sallet retired, he was not authorized to carry a firearm as a retired federal agent. *Id.*

     78.    A subordinate of Sallet's drafted a letter for him to give to the Illinois State Police to assist Sallet in obtaining a license to carry a concealed firearm. *Id.*

     79.    The Witness previously worked for the FBI. *Id.*

     80.    The Witness previously interacted with Sallet on a regular basis during at least one of her duty assignments with the FBI. *Id.*

February 21, 2024                         Respectfully Submitted,

                                       */s/ Michael S. Zummer*
                                       Michael S. Zummer (La. Bar No. 31375)
                                       2337 Magazine St. Unit D
                                       New Orleans, LA 70130
                                       Telephone: (504) 717-5913
                                       E-mail: afbilitigation@gmail.com
                                       *Counsel for United for FBI Integrity*